```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 16-4356(DSD/LIB)
```

Prosource Technologies, LLC,

        Plaintiff,

v.                                                **ORDER**

Certain Underwriters at
Lloyd's London Subscribing to
Policies PGIARK04292-00
and PGIXS00178-00,

        Defendant.

    Lauren E. Lonergan, Esq. and Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Dan D. Kohane, Esq. and Hurwitz & Fine, P.C., 424 Main Street, 1300 Liberty Building, Buffalo, NY 14202 and Stacy A. Broman, Esq. and Meagher & Geer, PLLP, 33 South 6th Street, Suite 4400, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss or to transfer venue by defendant Certain Underwriters at Lloyd's London Subscribing to Policies PGIARK04292-11 and PGIXS00178-00 (Underwriters). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion in part and transfers the case to the United States District Court for the Northern District of New York.

**BACKGROUND**

This insurance coverage dispute arises out of plaintiff ProSource Technologies, LLC's settlement with non-party Housing

Trust Fund Corporation (HTFC). ProSource is a Minnesota consulting firm which specializes in disaster and emergency management services. Compl. ¶¶ 10, 15. In April 2013, HTFC, a governmental unit of the State of New York, hired ProSource to manage certain recovery programs designed to assist New York citizens who were victims of SuperStorm Sandy. Id. ¶¶ 1, 17. HTFC thereafter refused to pay ProSource over $20 million due under the contract because of alleged billing errors. Id. ¶ 18. In November 2014, ProSource sued HTFC in New York state court (Albany) alleging breach of contract (Underlying Litigation). Id. ¶ 19. HTFC filed a counterclaim alleging billing errors and poor performance by ProSource in October 2015. Id. ¶ 20.

At the time of the Underlying Litigation, ProSouce was insured by Underwriters under two relevant policies. The professional liability policy (Primary Policy), in effect from November 1, 2014, to November 1, 2015, covers "DAMAGES that [ProSource is] legally obligated to pay as a result of CLAIMS." Id. ¶ 22; Broman Decl. Ex. 1, at 72. Damages include "an actual or alleged WRONGFUL ACT with respect to PROFESSIONAL SERVICES" provided by ProSource. Compl. ¶ 22; Broman Decl. Ex. 1, at 72, 74. With respect to settlement of any claims, the policy states that Underwriters "will not settle or compromise any CLAIM without YOUR consent" and that ProSource "shall do nothing to prejudice [Underwriters'] rights under this policy nor should [ProSource] admit liability or settle

2

any CLAIM without [Underwriters'] written consent." Compl. ¶ 22; Broman Decl. Ex. 1, at 77. Underwriters agreed to defend "any CLAIM to which this insurance applies." Compl. ¶ 23; Broman Decl. Ex. 1, at 72. The Primary Policy contains a choice of law provision, which provides that any dispute "over the meaning, interpretation or operation of any term, condition, definition or provision of this policy" will be governed by the "substantive law of the State of New York ... regardless of the choice of law or conflicts of law principles." Broman Decl. Ex. 1, at 80-81. Underwriters also issued a Following Form Excess Policy (Excess Policy) covering damages exceeding the Primary Policy limits. Compl. ¶ 24.

On October 30, 2015, ProSource notified Underwriters of HTFC's counterclaim and requested coverage under the policies. Compl. ¶ 25. Underwriters agreed to defend ProSource and reserved its rights with respect to coverage. Id. ¶ 26. According to ProSource, Underwriters failed to meaningfully participate in the Underlying Litigation despite ProSource's efforts to secure its involvement. Id. ¶¶ 27-35. In late April 2016, ProSource and HTFC engaged in serious settlement negotiations. Id. ¶ 42. Underwriters ignored ProSource's initial request for guidance, but later responded that it needed a written settlement proposal from HTFC. Id. ¶ 43. HTFC was unwilling to do so for a variety of reasons. Id. ¶ 44. Despite numerous efforts by ProSource to

3

meaningfully engage Underwriters in the settlement process, Underwriters refused. Id. ¶¶ 45-49. Rather than lose the opportunity to secure a reasonable settlement, ProSource agreed to settle the case without Underwriters' involvement or approval. Id. ¶ 50. HTFC agreed to pay ProSource $12.5 million, which resulted in an offset in HTFC's favor of $11,861,467. Id. Underwriters refused to accept the settlement terms and threatened that it would deem coverage forfeited if ProSource finalized the settlement. Id. ¶ 52. ProSouce finalized the settlement, thereby concluding the Underlying Litigation.

On December 6, 2016, ProSource commenced this case against Underwriters in Anoka County District Court alleging breach of the duties to defend and indemnify and breach of the implied duty of good faith and fair dealing. ProSource seeks damages and declaratory relief. Underwriters timely removed and now moves to dismiss or to transfer the case to the Northern District of New York.

**DISCUSSION**

**I. Standard of Review**

The court will first consider Underwriters' motion to transfer.[1] Section 1404(a) provides that "[f]or the convenience of

---

[1] Underwriters moves to transfer under 28 U.S.C. § 1406, which authorizes the court to dismiss or transfer a case brought in the wrong venue or district. In contrast, 28 U.S.C. § 1404(a)
(continued...)

4

parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Deciding whether to order a transfer under § 1404(a) "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). The relevant factors generally fall into three categories: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Id. There is, however, "no exhaustive list of specific factors to consider." Id.

## I. Convenience of the Parties and Witnesses

The merits of the case - coverage relating to ProSource's settlement with HTFC - turn on the nature and circumstances of the claims and counterclaims in the Underlying Litigation and the structure of the settlement. ProSource commenced the Underlying Litigation, which involved events that took place in and near Albany New York in the wake of SuperStorm Sandy. Specifically, HTFC hired ProSource to administer federal relief funds on behalf

---

(...continued)
"permits, but does not require, transfer when a case is initially filed in an appropriate venue but another court is a more convenient forum for trial." Wells Fargo Bank, N.A. v. First Cal. Mortg. Co., No. 12-2192, 2013 WL 358977, at *2 (D. Minn. Jan. 30, 2013). Because there is no legitimate dispute that this court is a proper venue for this case, the court will analyze transfer under § 1404(a).

of HTFC. Compl. ¶¶ 15-17; Broman Decl. Ex. 2 ¶¶ 13-21. ProSource did so by hiring and training over 400 employees, most of whom were New York residents, and by hiring and overseeing New York subcontractors. See Broman Decl. Ex. 2 ¶¶ 3-4, 22-25, 27-28, 30, 41, 57. ProSource managed the project from offices in New York, not its home office in Minnesota. See id. Under these circumstances, the court is persuaded that resolution of this case will require evidence and testimony from numerous New York based third-party witnesses, many, if not all, of whom are likely outside the court's subpoena power. Therefore, the convenience of the witnesses will best be served by transferring the case to New York. Any inconvenience to ProSource is de minimis given that it has engaged in substantial business in New York relating to this case and commenced the Underlying Litigation against HTFC in Albany.

## II. Interests of Justice

The interests of justice typically involve considerations of "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law[s] issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, Inc., 119 F.3d at 696. Other than the plaintiff's choice of forum, all factors are either neutral or support transfer.

ProSource first argues the interests of justice weigh in its favor because Underwriters agreed to abide by its choice of forum in the policies' service of suit clause:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction in the United States.

Broman Decl. Ex. 1, at 86. But the clause also expressly states that Underwriters did not waive the right "to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States." Id. The service of suit clause thus does not mandate litigation in ProSource's chosen forum, nor does it preclude Underwriters from seeking a transfer to another court of competent jurisdiction.

The court is also unpersuaded by ProSource's argument that transfer is inappropriate because the negotiation of the policies and Underwriters' denial of coverage may have occurred outside the proposed transferee district. As already discussed, coverage turns on the events involved in the Underlying Litigation, much of which appears to have occurred in New York, including the Northern District. The fact that some of the conduct at issue took place in New York but outside the Northern District does not render the proposed transferee district improper or inconvenient.

The court further notes that the parties agreed that New York law would apply to disputes "over the meaning, interpretation or operation of any term, condition, definition or provision of this policy." Broman Decl. Ex. 1, at 80-81. This case involves interpretation of the policies and duties that arise directly from the insurance contract. Therefore, New York law will likely apply to the entirety of this case.

As a result, the relevant factors favor transfer to the Northern District of New York. The court will deny Underwriters' motion to dismiss without prejudice so that it may be considered by the transferee court.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss or transfer venue [ECF No. 10] is granted in part;

2. The case is transferred to the United States District Court for the Northern District of New York; and

3. The motion to dismiss is denied without prejudice.

Dated: June 9, 2017

    s/David S. Doty
    David S. Doty, Judge
    United States District Court